# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA Ex rel. MICHAEL L. DAVIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case Number:  06-489 (RWR) |
| v. | ) ) ) | |
| THE DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT, THE DISTRICT OF COLUMBIA'S, MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12 (b) (1) and (6), and for the reasons set forth in the accompanying memorandum of points and authorities, Defendant, the District of Columbia (hereinafter the "District" or "Defendant"), by and through undersigned counsel, moves this Court for an order dismissing, with prejudice, above-captioned complaint.

This is a *qui tam* action brought by Davis and Associates (hereinafter "Davis") pursuant to the False Claims Act, 31 U.S.C. § 3730 ("FCA").  In order to properly sustain this complaint Davis is required to:

- support its claim of firsthand, *direct and independent knowledge* with sufficient facts;

- voluntarily provide information upon which the complaint is based to the government *before* filing an action,

- serve DOJ a disclosure statement *before* filing this complaint;

- file the disclosure to the government *prior to any public disclosure;*

1

- allege fraud with *specificity*;

- Allege *concert of action* to support the alleged conspiracy; and,

- Engage adequate legal counsel

The complaint fails on these and other bases to sustain claims against the District. Davis fails to add any direct or independent facts to the public disclosure that took place. Davis makes all of its salient fraud allegations on "information and belief." Nowhere does Davis aver filing a disclosure statement with DOJ; nor does Davis allege any voluntary provision to the government of facts or knowledge of the allegations or transactions similar to those in the public domain prior to the public disclosure or even prior to filing the above-captioned complaint. Davis alleges that the District, its agencies, officials and employees were involved in a conspiracy, notwithstanding that they are, as a matter of law, one entity, and cannot be said to conspire with itself. Davis fails to allege a concert of action of these individuals to adequately sustain a claim of conspiracy. Davis fails to prosecute this action with adequate counsel; but instead brings these claims *pro se*. For these and other reasons discussed below, this complaint should be dismissed with prejudice.

The False Claims Act, 31 U.S.C. § 3730 provides in pertinent part that "[n]o court shall have jurisdiction under this section based upon the public disclosure of allegations or transactions ... in a congressional ... report [or] hearing ...unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e) (4) (A). An OMB report made a public disclosure of the transaction at issue, *i.e.,* commingling of Medicaid/Medicare funds within the D.C. General fund, into the public domain. Once the allegations underlying Davis' *qui tam* lawsuit were in the public domain, Davis must establish that it is an "original source," that is, an entity that provides firsthand, direct

and independent evidence of the defendant's misconduct prior to the public disclosure. *United States ex rel. Stone v. Rockwell*, ___ U.S. ___, 127 S. Ct. 1397, 1405 (2007).  31 U.S.C. § 3730(e) (4) (B).  Davis cannot satisfy this condition.

Pursuant to LCvR 7(m) and due to the fact that this is a dispositive motion, no consent for this motion was sought from opposing *pro se* relator.  An LCvR 9(a) supporting memorandum and an LCvR 7(c) proposed order accompany this motion.

<div style="margin-left: 2em;">

Respectfully submitted:

PETER NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN EFROS [250746]
Chief, Equity Section I

/s/ Denise J. Baker
Denise J. Baker
D.C. Bar No. 493414
Assistant Attorney General
441 4th Street, Northwest, 6th Floor South
Washington, D.C. 20001
202-442-9887 (Telephone)
202-727-0431 (Facsimile)
Denise.baker@dc.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April 2008, true copies of the foregoing Motion to Dismiss, Memorandum of Points and Authorities, and proposed Order were served via U. S. Mail, postage prepaid upon:

Michael L. Davis, *pro se* plaintiff
1412 5th Street, NW
Washington, DC 20001

/s/ Denise J. Baker
DENISE J. BAKER

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA )<br>*Ex rel.* MICHAEL L. DAVIS, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>THE DISTRICT OF COLUMBIA, )<br> )<br>Defendant. )<br> ) | Case Number:  06-489 (RWR) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS

Defendant, the District of Columbia (the "District"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure 12 (b) (1) and (6), supports its motion to dismiss Davis's *qui tam* complaint by submitting this memorandum of points and authority.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This court should take judicial notice that for the third time plaintiff/relator, Davis and Associates (hereinafter "Davis" or "Relator") brings the same operative facts before a tribunal in order to garner undeserved monetary reward from the District.[1]

---

[1]    This court may take judicial notice of the fact that in September 2002, Davis filed a complaint in the D.C. Superior Court for declaratory judgment and for breach of contract arising out of the same operative facts as the above-captioned FCA complaint.  *Davis v. Anthony Williams*, No. 03-cv-000284, 2003 WL 2541567 (D.C. Super Ct. July 31, 2003) *aff'd Davis & Assoc. v. Williams*, 892 A.2d 1144 (D.C. 2006).  In the Superior Court, Davis alleged a contract with the D.C. Health and Hospital Public Benefit Corporation ("PBC") under which Davis averred its firm, "'identified for collection, 'dedicated revenue': of D.C. General:  to wit money due to D.C. General Hospital from uncollected Medicaid/Medicare payment in an amount in exceeding of Two Hundred million Dollars ($200,000,000.00.)  The efforts of Davis & Associates, also identified monies payable to D.C. General Hospital owed by the District of Columbia, as a result of matching funds pursuant to Medicaid.'"  (See Brief for Appellant *Davis v. Anthony Williams*, Civil Action No. 03-cv-000284, July 31, 2003, 2003 WL 2541567 *3, attached hereto as Exhibit "A").  Fed. R. Civ. Pro. 201.

Davis first cast his role as a wronged contractor[2]; but in its second complaint, Davis

characterized itself as a scorned minority contractor[3]; and, finally, Davis' FCA complaint

assumes the role of whistleblower or white knight.[4]  Regardless of the circumstance, Davis

should not be rewarded.

### A. Timeline of Events[5]

1.  In 1998, Davis performed Medicaid/Medicare cost report and reimbursement claim

    services for the District.  (Compl. ¶ 26).

2.  In the summer of 1999, Davis identified Medicaid/Medicare reimbursements allegedly

    owed to the D.C. Public Benefit Corporation ("PBC"), the legal entity that operated D.C.

    General Hospital and allegedly reimbursable from the District's Medicaid account, and

    compiled these reimbursements in a "Black Book."  (*Id.* at 29)

---

[2]        The court may take judicial notice of Davis' judicial allegations that the District breached the contract "by failing to deposit the funds in the manner required by law, thereby preventing Davis from collecting the contingent fees due under the contract. *Davis v. Williams*, 892 A.2d 1144, 1147 (D.C. 2006).  The D.C. Court of Appeals acknowledged that "the gravamen of Davis' complaint under the contract is that it performed the services, additional revenues have been realized and collected as a result, thereby triggering its right to payment, and the District has failed to pay. *Id.* at 1152-1153.  The Court acknowledged that "the [contract's] contingent fee is based upon any revenues realized and collected above a certain base line." *Id.* at 1152.  The D.C. Court of Appeals found that the contract does not condition its entitlement to a contingent fee upon the District's deposit of its Medicaid/Medicare receipts into [the PBC] account" as claimed by Davis. *Ibid.*  The Court affirmed the dismissal of Davis' contract action on the grounds that it failed to exhaust administrative remedies, and dismissed the request for declaratory relief on the grounds that there was no need to interpret the PBC statute in order to resolve the dispute. Fed R. Civ. Pro. 201.

[3]        In *Davis v. District of Columbia*, 501 F. Supp. 2d 77, 80-81 (D.D.C. 2007) (Kessler, J.), the court dismissed Davis' claims under 42 U.S.C. §§ 1981, 1983 for $268 million on the basis that the underlying contract, which is the same contract alleged *sub judice*, was void *ab initio* for failure to comply with the Anti-Deficiency Act, 31 U.S.C. § 131 et seq., and was not signed by the parties to be bound. Again, the same operative facts were raised by Davis.

[4]        The FCA complaint asserts that "[R]elator Davis is an original source of the information and allegations contained herein, as he has direct and independent knowledge of all information on which this claim is based. (Complaint ¶ 53).  The complaint also alleges that the allegations or transactions are in the public domain. (Complaint ¶ 30).

[5]        All additional assertions, allegations, and claims set forth in the complaint are made "on information and belief" and are not set forth in the timeline since they are speculative and lack specificity.

3. In August 1999, Davis allegedly presented these "Black Book" reimbursement allegations to the District. (*Id.* at 29).

4. On or about September 19, 1999, Davis alleges that there was a "secret meeting" held with District employees, officials and agents to discuss "'solving' the District's financial problems by eliminating costly healthcare services. . . ." among other things. (*Id.* at 33).

5. In April 2000, the District's CFO and other District officials released the District's comprehensive financial report for FY 1999, which did not mention the Black Book allegations. (*Id.* at 35).

6. On July 24, 2000, the District submitted to the U.S. House of Representatives Committee on D.C. Appropriations statements concerning commingling of PBC funds and "loans", which include Medicaid and Medicare monies, with the D.C. general funds, as well as "loans" made between the two accounts. (See Exhibit "B" attached hereto, GAO Report)[6]; (Compl. ¶ 30).

7. On September 29, 2000, the House Subcommittee issued a public statement of its investigation in a GAO Report. (Exhibit B).

8. Between April and August 2000, Davis alleges that it sought to bring the omission of the Black Book claims to the attention of numerous District officials. (Compl. at 37).

9. At an August 2000 meeting attended by District officials and Davis, Davis alleges that a District official made clear that the District's OCFO did not want to go through MAA, the District's Medicaid office, to draw down Medicaid reimbursements. (*Id.* at 40).

10. On March 15, 2006, Davis filed the above-captioned FCA complaint.

---

[6]    GAO Report Title: Anti-Deficiency Act Violation Involving the District of Columbia Health and Hospitals Public Benefit Corporation, B-285725, September 29, 2000. (See also, Complaint ¶ 30 "[T]he legality of the loan" has also been publicly called into question by the Federal Office of Management and Budget "OMB") in testimony before a Congressional subcommittee."). Fed. R. Civ. Pro. 201.

11. On or about August 8, 2007, the United States declined to intervene in the action pursuant to the False Claims Act, 31 U.S.C. § 3730 (b) (4) (B).

12. On or about September 17, 2007 this Court ordered that the complaint be unsealed and all pleadings appropriately served pursuant to 31 U.S.C. § 3730 (c) (3).

### B. The Complaint's Allegations

Count one alleges a false certification claim pursuant to 31 U.S.C. § 3729 (a) (1) as a result of the District's alleged intent to "use the money [taken from the District's Medicaid account] for the benefit of the District of Columbia General Fund" as opposed to D.C. General Hospital. (Compl. ¶ 56). Davis asserts that it is an "original source." (*Id*. at ¶ 53).

Count two alleges that the District falsely certified on the District's CMS-64 Medicaid reimbursement form that Medicaid/Medicare funds were turned over to D.C. General Hospital. (*Id*. at. ¶ 59). Davis contends that the alleged failure to turn over the funds to D.C. General is a violation of 31 U.S.C. § 3729 (a) (2). (*Id*.)

Count three alleges that the District conspired with others to defraud the federal government. Davis contend that this alleged conspiracy is a violation of 31 U.S.C. § 3729 (a) (3). (*Id*. at ¶ 62).

### C. Qui Tam Relator "Original Source" Complaint Allegations

Davis claims that its "original source" status derives from its contractual relationship to the District. On March 10, 2000, Davis entered into an alleged contingency fee contract with the District of Columbia Health and Hospital Public Benefit Corporation ("hereinafter "PBC"), which operated D.C. General Hospital. *Davis v. District of Columbia*, 501 F. Supp. 2d 77, 79 (D.D.C. 2007)[7] (Compl. ¶ 26-27). The purpose of Davis' contract was to "complete certain

---

[7]    The D.C. Court of Appeals acknowledged the fact-finding of the trial court in its appellate opinion.

Medicare and Medicaid cost reports for the PBC and receive as payment an amount equal to ten percent of the revenue collected above a set baseline." *Id.* Thus, as it was inferred by the D.C. Court of Appeals, the more money that Davis avers is "discovered" as being Medicaid/Medicare funds and placed in a particular PBC account, the more money Davis may collect as a contingent fee. 892 A.2d *at* 1152-1153.

"Davis alleges it identified more than $200 million for collections under this contract for which it was not paid." *Id.* In 1999, Davis and Associates allegedly identified more than $180 million in Medicaid and Medicare reimbursements owed to the PBC and reported the reimbursements owed in a "Black Book"). (Compl. ¶ 28). Davis' FCA complaint alleges that the "Black Book also identified an additional $55 million in "state" Medicaid participation money that the District had wrongfully withheld from the PBC as an "offset payment" on a fraudulent "loan" the District Government claimed to have made to the PBC. (*Id. at* ¶ 30).

Davis acknowledges that a "public disclosure" took place on which Davis bases its "original source" status. (*Id.* at 30). The U.S. Office of Management and Budget ("OMB") reported the results of its own investigation of the funding relationship between the District's general fund and the PBC accounts culminating in a report dated September 29, 2000 as a result of "published news reports that the PBC had drawn $60 million in unbudgeted cash from the District of Columbia General Fund in the context of an Anti-Deficiency Act violation." (See GAO Report, Exhibit B attached hereto, page 1).

OMB found and reported several of the key allegations set forth in the FCA complaint. For example, the OMB report uncovered that there had been commingling and interplay between the District's General Fund and the PBC accounts as early as 1997, well before Davis "blew its whistle" in its 2006 FCA lawsuit, to wit:

Prior to the establishment of the PBC in 1997, the District paid the liabilities of DC General Hospital (the predecessor to the PBC) from the General Fund. To the extent payments exceed resources available to the Hospital, the District and the Hospital treated the excess payments as "loans" for account purposes. By the end of fiscal year 1994 the amount of the "loans" exceeded $85 million. As of September the District of Columbia accounted for the $85 million in "loans" as uncollectible in an allowance account. Thereafter, the District wrote off the uncollectible "loans" without obligating the full "loan" amount against an appropriation account.

\* \* \*

Following the District's establishment of the PBC in 1997, the District has "advanced" cash to the PBC from the General Fund to pay PBC liabilities.

\* \* \*

Since the establishment of PBC in 1997, the District has made "advances" to PBC in the total amount [1] of approximately $99,059,000 as follows: $58,000,000 during fiscal year 2000, $29,154,000 during fiscal year 1999 and $12,261,000 during fiscal year 1998. The "advances" to PBC are in addition to the line item amount of the transfer to PBC from the District's General Fund pursuant to the District's appropriation act.

What the District has characterized as "loans" or "advances" to the PBC are in fact payments made on behalf of PBC from the District of Columbia General Fund. The District used pooled cash to make these payments, which have turned out to exceed the resources that PBC actually had available.

(Exhibit B at pages 1-3).

Most importantly, the OMB report recognized that the District engaged in "Pooled Cash Advances," which is a commingling of agency funds, including those of the PBC, as follows:

The District submission [14] indicates that it centrally manages its cash by pooling together available monies from its various operating and capital project funds.

PBC participates in the District's cash management pool. The District uses pooled cash when making payments on behalf of PBC to employees, vendors, service providers, contractors and others. When the PBC overspends or overdraws its share of the pooled cash, it has a liability to the District's

> General Fund (which essentially has loaned the cash to the PBC). The cash is
> advanced for cash flow purposes with the expectation that it will be repaid
> when the PBC converts accounts receivable to cash.

(Exhibit B page 4).

Similarly, the FCA complaint alleges a fraudulent drawdown of Medicaid funds that

were commingled with the District's general fund and used to pay for non-Medicaid related

expenses, as opposed to payment for D.C. General Hospital's expenses under the Medicaid

program. Compl. ¶ 2). Moreover, these are the very facts previously published in the OMB

Report. Moreover, this is the same argument that Davis made in the D.C. Superior Court. (See

fn. 1-2, *supra*).

Thus, the FCA complaint repackages the legal claim from a breach of contract in the

Superior Court claim, to a racial discrimination claim in the prior District Court case, to one of

fraud and conspiracy in the current FCA complaint.

### D. Complaint Allegations of Fraud on "Information and Belief"

Factually absent from the FCA complaint is the specificity required of fraud pleadings.

The crux of Davis' *qui tam* fraud claims is pled on "information and belief." For example, all of

the following are pled on information and belief: "[a]t some point subsequent to the August 2000

meeting. . ." another meeting was held, "most likely on or about September 2000 . . ..". (Compl.

¶ 41). "[The District's] CFO caused a new financial account to be created . . . ("the dummy

account"). (*Id.* at ¶ 44). "[The District's] CFO Gandhi instructed that the Black Book Medicaid

FFP be withdrawn from the District's Medicaid account with full knowledge that it would not be

used to reimburse the entity . . .." (*Id.* at 43). Further, "[the District's] CFO Gandhi caused the

dummy account to be created for the purposes of concealing the diversion of the Black Book

Medicaid FFP that had been withdrawn from the District's Medicaid account . . .." (*Id.* at ¶ 45).

"[The District's] CFO Gandhi "caused that money to be diverted, directly and indirectly, to the

District's General Fund." (*Id.* at ¶ 46). Even the alleged false certification to the federal

government is pled "**on information as belief.**" (*Id.* at ¶ 49).

### E.  *Legal Representation Status—Pro se*

Davis is a *pro se* plaintiff.  On February 4, 2008 the law firm of Akin Gump filed a

motion to withdraw as counsel for the relator.  On February 21, 2008 this Court granted prior

counsel's motion to withdraw its appearance.  To date, the docket does not indicate that Davis

has new counsel.

## II.    LEGAL STANDARDS

### A.  *Federal Rules of Civil Procedure 12 (b) (1) Pleading Requirements*

On a motion to dismiss pursuant to Rule 12 (b) (1), the plaintiff bears the burden of

establishing that the court has jurisdiction.  *Dist. of Columbia Retirement Bd. v. United States*,

657 F. Supp. 428, 431 (D.D.C. 1987).  A court must dismiss a case when it lacks subject matter

jurisdiction.  "At the motion to dismiss stage, counseled complaints, as well as *pro se*

complaints, are to be construed with sufficient liberality to afford all possible inferences

favorable to the pleader on allegations of fact.  *Settles v. U.S. Parole Comm'n*, 429 F. 3d 1098,

1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on a motion to

dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance

of the evidence.  *Am. Farm Bureau v. Environmental Port. Agency*, 121 F. Supp. 2d 84, 90

(D.D.C. 2000). The court need not, however, accept inferences unsupported by the facts alleged

or legal conclusions that are cast as factual allegations. *See, e.g., Lawrence v. Dunbar*, 919 F.2d

1525, 1529 (11th Cir. 1990).  In addressing a motion to dismiss pursuant to Rule 12 (b) (1), the

Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or

the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Coalition for Underground Expansion v. Mineta*, 333 F. 3d 193, 198 (D.C. Cir. 2003).

### B. Federal Rules of Civil Procedure 12 (b) (6)Pleading Requirements

The Federal Rules of Civil Procedure Rule 12 (b) (6) require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. In order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v Twombly,* 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355, U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (*per curiam*). Although "detailed factual allegations" are not necessary to withstand a Rule 12 (b) (6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also, Papasan v Allain,* 478 U.S. 265, 284-286 (1986) (facts must be sufficiently described in the complaint to allow the court to draw such inferences); Fed. R. Civ. Pro. 12(b) (6). "Factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)" *Bell Atl.,* 127 S. Ct. *at* 1965 (citations omitted).

While a Court must construe the complaint in plaintiffs' favor, it "need not accept inferences drawn by the plaintiff [ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.,* 16 F. 3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v FDIC,* 132 F. 3d 753, 762 (D.C. Cir. 1997). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the

court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F. 3d 621, 624 (D.C. Cir. 1997).

### C.  Federal Rules of Civil Procedure 9 (b) Pleading Requirements

The Federal Rules of Civil Procedure Rule 9 (b) require that a complaint alleging fraud must be pleaded with particularity. Fed. R. Civ. Pro. 9(b). "[T]he complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. Put another way, the complaint must identify the 'who, what, where, when and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hospital,* 441 F.3d 552, 556 (8th Cir. 2006). It is impermissible in this circuit for Plaintiff to rely on "information and belief" pleading, instead of making more detailed, factual allegations in support of fraud allegations. *See Bender v. Rocky Mountain Drilling Associates, 648 F. Supp. 330, 335-36 (D.D.C. 1986).*

### D.  Federal Rules of Civil Procedure 11 Pleading Requirements

Rule 11 applies to all civil filings, including *qui tam* complaints, and provides in pertinent part as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> * * *
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . ..

If, after a reasonable pre-complaint inquiry, a person still bases the factual allegations of his complaint only on rumor or suspicion, he does not have an adequate Rule 11 basis to

make those allegations. *Bankers Trust Co. v. Old Republic Inc. Co.*, 959 F. 2d. 677-683

(7th Cir. 1992).

### E. *False Claims Act Pleading Requirements*

The jurisdictional inquiry proceeds in two steps, each with two subsidiary prongs of its

own. First, the court must determine that: (1) there has been a public disclosure of allegations or

transactions; and (2) that the lawsuit is based upon the public disclosure of allegations or

transactions. *U.S. ex rel. Springfield Terminal Railway Co. v. Quinn,* 14 F.3d 645, 651 (D.C. Cir.

1994).

Second, if there is a public disclosure, the court must determine whether the relator is an

original source, meaning one who: (1) has direct and independent knowledge of the information

and (2) voluntarily provided that information to the government before filing the action. *Id.*

The information referenced in Section 3730 (e) (4) (B) is the information upon which the

relators' allegations are based," meaning that the inquiry should not focus on whether the relator

was the source of the public disclosure, but rather whether he is a source of the information

underlying his own suit. *United States ex rel. Stone v. Rockwell*, ___ U.S. ____, 127 S. Ct. 1397,

1408 (2007).

## III.    LEGAL ARGUMENT

### A. *SUMMARY OF ARGUMENT*

In order to properly sustain this complaint pursuant to the False Claims Act, Davis is

required to:

- support its claim of firsthand, direct and independent knowledge with
  sufficient facts;

- *voluntarily* provide information upon which the complaint is based to the government *before* filing an action,

- serve a disclosure statement on DOJ prior to filing the complaint;

- allege fraud with *specificity*;

- allege *concert of action* to support the alleged conspiracy; and,

- engage *adequate legal counsel*.

The complaint fails on these and other bases to sustain claims against the District. Davis fails to add any direct or independent facts to the public disclosure that took place. Davis makes all of its salient fraud allegations on "information and belief," which are inadequate. Nowhere does Davis aver filing a disclosure statement with DOJ; nor does Davis allege any voluntary provision to the government of facts or knowledge of the allegations or transactions similar to those in the public domain prior to the public disclosure or even prior to filing the complaint. Davis alleges that the District, its agencies, officials and employees were involved in a conspiracy, notwithstanding that they are, as a matter of law, one entity, and cannot be said to conspire with itself. Davis fails to allege a concert of action of District personnel to adequately sustain a claim of conspiracy. Davis fails to prosecute this action with adequate counsel; but instead brings these claims *pro se*. For these and other reasons discussed below, this complaint should be dismissed with prejudice.

### B. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS ALLEGED IN THIS COMPLAINT, PURSUANT TO FED. R. CIV. P. 12(B)(1), BECAUSE DAVIS FAILS TO ALLEGE THE PREQUISITES TO THE ORIGINAL SOURCE RULE

The district court does not have subject matter jurisdiction if it can be demonstrated that the complaint, to any extent, is based upon information contained in "public disclosures," and the relator cannot satisfy the safety net "original source" criteria. 31 U.S.C. § 3730(e) (4) (A).

16

*United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F. Supp.2d

443, 454 S.D.N.Y. 2001). "Original source" criteria are that the relator has (1) direct and

independent knowledge of the facts upon which the allegations are based, and (2) has voluntarily

provided the information upon which the complaint is based to the Government before filing an

action. *Rockwell*, 127 S. Ct. at 1405 (2007); 31 U.S.C. § 3730(e) (4) (B). Davis' claim

contentions are based upon a public OMB report which placed the salient fraud allegations in the

public domain. Any fraud allegations not previously disclosed by the GAO are mere predictions

or conjecture on the part of the relator of which it has no particularized direct or independent

knowledge on which to base this Court's subject matter jurisdiction.

### 1.   Findley's "Substantially Similar to Allegations in the Public Domain" Requirement

This Circuit has interpreted the *qui tam* statute in *United States ex. rel. Findley v. FPC-*

*Boron Employees' Club,* 105 F.3d 675, *supra*, and *United States ex rel. Springfield Terminal Ry.*

*Co. v. Quinn,* 14 F.3d 645 (D.C. Cir. 1994). According to this Circuit, "the jurisdictional bar is

triggered whenever the relator files a complaint describing allegations *or* transactions

*substantially similar* to those in the public domain." *Findley,* 105 F.3d at 682 (emphasis added).

Its purpose is "to limit *qui tam* actions 'to those in which the relator has contributed significant

independent information [that is not already in the public domain].'" *Id.* at 682 (brackets

supplied by the Court), (quoting *Springfield Terminal Ry. Co.,* 14 F.3d at 653). The jurisdictional

bar thus applies "'when either the allegation of fraud *or* the critical elements of the fraudulent

transaction themselves were in the public domain.'" *Id.* at 683 (emphasis added), quoting

*Springfield Terminal Ry. Co.,* 14 F.3d at 654. Put another way, "*qui tam* actions are barred ...

when enough information exists in the public domain to expose the fraudulent transaction ... or

the allegation of fraud ..." *Findley,* 105 F.3d at 686, quoting *Springfield Terminal Ry. Co.,* 14

F.3d at 654.

Thus, for example, in *Findley,* this Court dismissed a *qui tam* action for want of

jurisdiction because it was based on publicly disclosed information and the relator was not the

original source of the government's information. The practice of operating vending machines in

federal facilities and retention of profits had been disclosed in a 1952 Comptroller General

Opinion, which observed that the legal authority of administrative officials to agree in this

practice was "'doubtful;' " a 1974 Senate Report "reveal[ed] a history of GAO and congressional

inaction despite an awareness of the questioned legality of the employee groups' retention of

funds." 105 F.3d *at* 685-686.

The relator in *Findley,* who had identified specific employee clubs in the context of a

losing bid to provide vending machines in federal facilities, urged that "his identification of the

... employees' organizations" should be analogized to "that of an individual blowing the whistle

on specific defense contractor overcharges, and warn[ed] that a subject matter public disclosure

bar based on the occurrence of numerous congressional hearings concerning generic defense

contractor fraud would frustrate the purpose of the *qui tam* provisions by foreclosing suits by

whistleblowers who have identified specific instances of fraudulent misconduct." *Id.* at 686.

Nevertheless, the Findley court found a jurisdictional bar to plaintiff's claim based on the prior

public disclosure.

Likewise, Davis is jurisdictionally barred from maintaining its claims because the GAO

Report's allegations and transactions placed the government and public on notice of

commingling the PBC account and the District general fund account.   The GAO reported the

District's practice of "loaning" funds to the PBC and getting paid back when the funding source,

i.e., Medicaid/Medicaid reimbursed the PBC. (See Exhibit B page 1). In other words, the government knew that the Medicaid reimbursements repaid the District. Thus, the government knew or should have known that the funds were deposited into the general fund to facilitate the repayment to the District. In fact, the GAO report acknowledged the "commingling" of PBC account funds with the District's general fund. Most importantly, the government knew these facts in September 2000, prior to any disclosure to the federal government by the relator.

Indeed, the September 2000 OMB specifically recognized that the District engaged in "Pooled Cash Advances," which is a commingling of agency funds, including those of the PBC, to wit:

> PBC participates in the District's cash management pool. The District uses pooled cash when making payments on behalf of PBC to employees, vendors, service providers, contractors and others. When the PBC overspends or overdraws its share of the pooled cash, it has a liability to the District's General Fund (which essentially has loaned the cash to the PBC). The cash is advanced for cash flow purposes with the expectation that it will be repaid when the PBC converts accounts receivable to cash.

(*Id.*). Davis' 2006 complaint simply adds no new fraud allegations with respect to alleged "loans" by the District to PBC funds.

Likewise, the September 2000 OMB report six years earlier than the Davis 2006 complaint evidences that the District made "loans" to the PBC from the D.C. general fund. As stated therein, "[T]o the extent payments exceed resources available to the Hospital, the District and the Hospital treated the excess payments as "loans" for account purposes. By the end of fiscal year 1994 the amount of the "loans" exceeded $85 million. As of September the District of Columbia accounted for the $85 million in "loans" as uncollectible in an allowance account."

(*Id.*)

To recapitulate, the GAO report placed the government on notice of Davis' alleged "revelations" concerning the PBC accounts. It placed the information in the public domain. OMB was well aware that the District engaged in funding practices or transactions that made it improbable to trace Medicaid/Medicare monies once in the District's General Fund even though such monies were specifically due to PBC. Commingling of federal funds is, according to Davis, an essential element and precursor to the alleged illegal act of fraud in converting the monies to other uses. (Compl. ¶ 2). Here, it was and is Davis's job to add something "new;" that is, new and unknown fraud allegations, to the GAO allegations and findings—something more than mere conjecture on "information and belief." Davis' complaint fails to do so and thus Count and Two of the complaint must be dismissed.

The purpose of the public disclosure jurisdictional bar is to limit *qui tam* jurisdiction "to those cases in which the relator played a role in exposing a fraud of which the public was previously unaware." *Findley*, 105 F.3d at 678. If information is not in the public domain, a presumption exists that the **government is unaware** of the allegations and thus the relator, by filing the action, contributes valuable information to the government. Hence, these *qui tam* actions are allowed to proceed. Conversely, if information is in the public domain, it is presumed that the **government is aware** of it and will either take appropriate action or, due to the public nature of the information, be held politically accountable for its failure to act.

Davis added no new fraud allegations with respect to commingling District and PBC funds. Just like the September 2000 GAO Report, the 2006 FCA complaint alleges a fraudulent drawdown of Medicaid funds that were commingled with the District's general fund, and used to pay for non-Medicaid related expenses, as opposed to payment for D.C. General Hospital's expenses under the Medicaid program. (Compl. ¶ 2).

2.    *Rockwell's "Direct and Independent Knowledge of Information"*
*Requirement*

That the acts or omissions of the District are in the public domain should conclude this

analysis; however, Davis also fails to sustain the requirements of the second step of the analysis.

The next step in the subject matter jurisdictional analysis is to determine whether Davis meets

the "original source" test. "Original source" criteria are that the relator has (1) direct and

independent knowledge of the facts upon which the allegations are based, and (2) has voluntarily

provided the information upon which the complaint is based to the Government before filing an

action. *Rockwell*, 127 S. Ct. at 1405 (2007).    31 U.S.C. § 3730(e) (4) (B).  A prospective

relator's knowledge is "direct" if he acquired it through his own efforts, without an intervening

agency, and it is "independent" if the knowledge is not dependent on public disclosure.  *See*

*Springfield Terminal Railway Co.,* 14 F.3d at 656 (D.C. Cir. 1994).  Davis does not meet the

"original source" test for subject matter jurisdiction.

In *Rockwell* , *supra*, the Supreme Court reviewed the original source requirement of the

public disclosure bar, and decided that a mere *projection* or *prediction* of fraud, without actual

direct knowledge of the fraud, did not qualify relator as an "original source."  127 S. Ct. at 1410.

In other words, *Rockwell* more stringently applies the "original source" rule than *Findley, supra.*

The facts in *Rockwell* are set forth *at* 1401-1405, and are summarized as follows: Stone,

the *Rockwell* plaintiff-relator, was an engineer at Rockwell's weapons plant from 1980 through

1986.  Stone evaluated Rockwell's manufacturing process of creating "pondcrete." Stone

concluded that the proposed pondcrete would create an environmental hazard.  Stone alerted his

beliefs to management and later to the government.  As a result, the government executed search

warrants.  Newspaper articles reported on the search, which resulted in the public disclosure of

the claims against Rockwell.

21

After Stone left Rockwell, he filed a *qui tam* action. In 1996, the government intervened in Stone's lawsuit, which resulted in an amended joint complaint against Rockwell. The amended complaint characterized the pondcrete contention as due to "an incorrect cement/sludge ratio used in pondcrete operations" and that the pondcrete failed because a new foreman had reduced the cement-to-sludge ratio. Judgment was rendered against Rockwell

By a 6-2 vote, the Supreme Court reversed, holding that Stone was not an original source, notwithstanding Stone's insider status and direct, and internal communications regarding the defective product because Stone's pondcrete claim, like that of Davis, *sub judice*, occurred **after** the relator left employment with the Defendant. Stone, like Davis, had no direct knowledge that the process became defective after he left Rockwell's employ; he did not know if false statements were communicated to the government about the process/product, he did not know if the process had been ameliorated in the interim. Stone only "predicted" that the process would lead to defects, and hence could not qualify as an original source based upon the timeline. Thus, under the Court's reasoning in *Rockwell*, even where the relator possessed direct knowledge that a particular outcome *could occur*, the relator lacks "direct" knowledge if the relator does not know that the event *actually did occur*.

Similarly, Davis is not an "original source" because it only "predicted" that the District would submit a CMS-64 that would or may have failed to include "Black Book" financial data. Like Stone, Davis does not allege any actual knowledge that the CMS-64 was submitted; Davis does not allege that he knows whether the CMS-64 was "corrected." There are no facts to support a conclusion that Davis had actual knowledge because Davis left the District's contractual relationship prior to submission of the CMS-64. Nowhere in the complaint's

timeline is it alleged when a CMS-64 was submitted. All that is pled is Davis' conjecture of fraud on information and belief.

### 3.  The FCA complaint fails to allege voluntary disclosure of information to the Government

Davis failed to allege that it *voluntarily* provided the information upon which his complaint is based to the Government before filing an action under § 3730. 31 U.S.C. § 3730 (e) (4) (B); *U.S. ex rel. Settlemire v. District of Columbia*, 198 F. 3d 913, 916 (D.D.C. 1999). In addition, procedurally, every relator is mandated by the FCA, § 3730 (b) (2), to serve the Department of Justice ("DOJ") not only with the *qui tam* complaint but also with a "written disclosure of substantially all material evidence and information that the person possesses." 31 U.S.C. § 3730 (b) (2). Serving an appropriate disclosure statement on DOJ does *not* satisfy the original source criterion of government disclosure. 31 U.S.C. § 3730(e)(4)(B); *United States ex rel. King v. Hillcrest Health Center, Inc.*, 264 F.3d 1271, 1280-81 (10th Cir. 2001), *cert. denied*, 535 U.S. 905 (2002).

Both criteria of "direct and independent knowledge" and "voluntary disclosure" *must* be satisfied to secure original source status. *Id.* Davis does not even allege that it made any disclosure to the government or even filed a personal disclosure statement with the DOJ, voluntary or otherwise.

This Circuit has interpreted this requirement stringently and held that the government disclosure must occur not only prior to filing the complaint, but also prior to any "public disclosure" occurring. *Findley*, 105 F.3d *at* 690-91; *Accord, United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 334 (6th Cir. 1998). There is nothing in the FCA complaint that alleges disclosure, voluntary or otherwise, was made to the federal government prior to the District's revelations to OMB in 2000.

### C.  THE FCA COMPLAINT COUNTS I AND II SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE DAVIS FAILS TO ALLEGE THE ELEMENTS OF FRAUD WITH PARTICULARITY

Davis' (1) failure to plead fraud with particularity, (2) failure to allege a request for payment by the District to the government, (3) failure to allege the time, place and manner of the fraud, and (3) decision to plead the salient fraud allegations solely "on information and belief," defeats fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v Twombly,* 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355, U.S. 41, 47 (1957).  The District is prejudiced and these counts I and II should be dismissed.

Counts I and II of the FCA complaint allege that the District violated the FCA, 31 U.S.C. § 3729 (a) (1) (2), by knowingly causing false or fraudulent claims or records to be made or presented to the federal government.  Davis' complaint allegations must withstand, therefore, the thresholds established by the FCA, and the specificity requirements of the Federal Rules of Civil Procedure Rules 9 and 11.

To adequately plead District liability under the FCA, Davis must allege: (1) the existence of the request for payment, and (2) that the request was fraudulent.  *U.S. v. Bouchey*, 860 F. Supp. 890, 892 (D.D.C. 1994) (citing *U.S. ex rel. Glass v. Medtronics*, 957 F. 2d 605, 608 (8th Cir. 1992).

To adequately plead liability for fraud under Rule 9(b), Davis must adequately state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C.Cir.1994). The claim also must state which individual made the misrepresentation. *See United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 999, (1982).

It is impermissible for Davis to rely on "information and belief" in making fraud allegations in this jurisdiction, instead of making more detailed, factual allegations. *See Bender v. Rocky Mountain Drilling Associates, 648 F. Supp. 330, 335-36 (D.D.C. 1986).*

And, to avoid Rule 11 sanctions, complaint allegations may not be based on rumor or suspicion. *See e.g., Bankers, Trust Co. v Old Republic Ins. Co.*, 959 F. 2d 677, 683 (7th cir. 1992).

### 1. The Complaint Fails to Adequately Allege a Request for Payment Made by the District to the United States

Davis must allege the existence of a request for payment as a first step toward overcoming a motion to dismiss. *U.S. v. Bouchey*, 860 F. Supp. at 892, *supra* (citations omitted). However, nowhere does Davis allege that the District made a request for payment. Nowhere does Davis allege that it has actual knowledge that such a request for payment by the District to the federal government was made.

### 2. The Complaint Fails to Adequately Allege the Time, Place or Manner of Fraud with the Requisite Degree of Particularity

A complaint must allege the supporting facts of fraud with a higher degree of particularity, which includes the time, place and manner of the fraud. Fed. R. Civ. P. 9 (b). *Juliano v. Federal Asset Disposition Association,* 736 F. Supp. 348, 353 (D.D.C. 1990) (Requiring heightened pleading in FCA claims).

This Circuit applies stringent pleading requirements that fraud be alleged "with particularity," as evident in the cases of *United States ex rel. Williams v. Martin-Baker Aircraft Company, Ltd., et al.,* No. 03-7079 2003 WL 25719501 * 2 (D.C. Cir. Nov. 26, 2004). The facts in the *Williams qui tam* suit arose as a result of the contracts that Defendant, Martin-Baker, negotiated with the Navy, and subcontracted to Teledyne Technologies, and are summarized as

follows:  Teledyne certified to Martin-Baker that the cost and pricing data it had made available

to the government were accurate, complete and current to the best of its knowledge and belief.

According to the complaint, Teledyne disregarded historical actual cost with respect to its

certifications that, in turn, rendered Martin-Baker's invoices submitted to the Navy false claims.

Relator Williams, who was Martin-Baker's chief Contract Negotiator from 1991 to 1996,

allegedly told the Navy to "continue to challenge" the cost or pricing data for products sold under

one of the contracts, and reported to his superior that he had so advised the Navy. *Williams* at *1.

In 1997, Williams filed a *qui tam* lawsuit under the FCA alleging that Martin-Baker and

Teledyne had submitted false claims to the Navy. *Id.*  The federal government declined to

intervene.

The district court dismissed Williams' FCA claim for failure to allege fraud with

particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  *Williams* at *2.

In affirming the dismissal, the court of appeals noted that Williams' allegations that the time of

the alleged false representations extended "at least through 2002" was "entirely inadequate"

because it did not allege a start date.  *Id.* at *3.

The court of appeals next held that Williams had failed to identify with the required

particularity the individuals who were allegedly involved in the fraud. The court held that a

reference to "management," coupled with a long list of names, was inadequate because the

complaint failed to explain the role of any of the listed individuals in the alleged fraud.  *Id.*  This

deficiency not only failed to provide information necessary to prepare a defense, but also

subjected the named individuals to vague and potentially damaging allegations of fraud, which

was contrary to one of the primary purposes of Rule 9 (b). *Id.*

Similarly, Davis does not allege fraud with specificity. Davis woefully fails to allege the time, place and content of the fraudulent actions, parties, and events. Davis does **not** admit that he **actually** witnessed any actual fraudulent activity or transaction. Davis avers only that [it] was a direct witness to many of the events *leading up to the District's fraud. . . .*" (Compl. ¶ 53) (emphasis added). This does not meet the particularity pleading requirement for fraud since Davis was not a direct witness to any fraud.

The FCA complaint alleges that the District's decision to omit the Black Book findings was adverse to "generally accepted accounting principles ('GAAP')." (*Id*.). However, failure to apply "generally accepted accounting principles," without more, does not state a claim for fraud.

Davis alleges that a secret meeting occurred generally in August 2000. (Complaint ¶ 38). According to Davis, District of Columbia officials, employees, and agents, along with relator and his agents attended the meeting. (*Id*.). Also, according to Davis, the D.C. OCFO asked, "How do we actually get the cash?" (*Id*. at ¶ 39). When told that the process involved reimbursement of D.C. General Hospital out the District's Medicaid account, the FCA complaint alleges that the District representatives reacted negatively. *(Id.)*. However, "reacting negatively" does *not* state a claim for fraud.

Similar to *Williams, supra*, Davis alleges no specific dates on which fraudulent acts took place alleged in the FCA complaint. Instead there is a bare allegation that "[I]n April 2000, the OCFO, the Mayor, the Financial Control Board, and the District Council released the District's comprehensive financial report for FY 1999." (Complaint ¶ 35). Fraud may not be inferred from an allegation that a "comprehensive financial report" was released since a release of financials is not fraud.

Davis alleges that the relator was informed that the "Black Book" receivables would not be included in the financials (Complaint ¶ 33); and that the D.C.-OCFO "did not want to go through MAA to draw down the Black Book funds" (*Id.* at ¶ 40). Merely wanting to avoid MAA [the government] does not infer, however, that a fraudulent action took place.

The purpose of particularized pleadings for fraud-related pleadings is three-fold: First, it discourages nuisance suits; second, it prevents plaintiff from sullying the reputation of a defendant with baseless allegations; and, third, it puts a defendant on notice of the actions he must investigate and defend. *U.S. v. Cannon*, 642 F. 2d at 1385. Where, as here, the tripartite purpose is not met, the complaint must fail.

### 3. The Complaint's Reliance upon "Information and Belief" Pleading Fails to Adequately Allege Fraud with the Requisite Degree of Particularity

Davis' complaint alleges essential contentions of fraud "on information and belief." (*See e.g.* Compl. ¶¶ 41, 43, 44, 45, 46, 49). General allegations based on "information and belief," do not, however, satisfy requiring all averments of fraud to be stated with particularity. *Bender,* 648 F. Supp. at 335-36*; See also, Bresson v. Thompson McKinnon Securities, Inc.,* 641 F. Supp. 338, 346 n. 6. (S.D.N.Y. 1986)*.* Davis allegations "on information and belief" are inadequate and worthy of dismissal pursuant to Fed. R. Civ. Pro. 9 (b) and 11.

Specifically, Davis alleges "**on information and belief**" that "at some point subsequent to the August 2000 meeting. . ." another meeting was held, "most likely on or about September 2000 . . .." (Compl. ¶ 41). Davis also alleges "**on information and belief**" that ". . . D.C.-CFO caused a new financial account to be created . . . ("the dummy account"). (*Id.* at ¶ 44). Additionally, "**on information as belief**," Davis alleges that, "DC-CFO Gandhi instructed that the Black Book Medicaid FFP be withdrawn from the District's Medicaid account with full knowledge that it would not be used to reimburse the entity . . .." (*Id.* at 43). Further, Davis

alleges, "**on information and belief**," that "D.C.-CFO Gandhi caused the dummy account to be created for the purposes of concealing the diversion of the Black book Medicaid FFP that had been withdrawn from the District's Medicaid account . . .." (*Id*. at ¶ 45). According to the complaint, "**on information and belief**," "DC-CFO Gandhi, "caused that money to be diverted, directly and indirectly, to the District's General Fund." (*Id*. at ¶ 46). Even the alleged false certification to the federal government is pled "**on information as belief.**" (*Id*. at ¶ 49). There is no allegation of who, specifically, conspired to submit the claim to the U.S. government, or when exactly when it was submitted. The complaint only states that it was submitted, on "**information and belief**" "at some time subsequent to the withdrawal of the Black Book Medicaid FFP from the District's Medicaid account." (*Id*. at. ¶18).

### D. COUNT III ALLEGING CONSPIRACY TO DEFRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. PRO. 12 (b)(6)

Davis asserts a third basis for FCA liability derived from a conspiracy to defraud the government. 31 U.S.C.A. § 3729 (a) (3). However, Davis' Count III fails for its failure to allege concerted action, and failure to acknowledge the intracorporate conspiracy doctrine, which recognizes that it not possible for the District, its officials, employees, and agents to conspire since they are one entity.

The FCA provides liability for certain acts against any person who: "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C.A. § 3729 (a) (3). To state a claim under § 3729(a) (3), Davis must assert: (1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim. *See, e.g., United States ex rel.*

*Stinson, Lyons, Gerlin & Bustamonte, PA v. Provident Life & Accident Ins. Co.*, 721 F. Supp.

1247, 1259 (S.D. Fla. 1989) (citing *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 828

(S.D.N.Y.1986), *aff'd*, 817 F.2d 1007 (2d Cir.1987)).

### 1. The Intracorporate Conspiracy Doctrine Bars Relief under Count III

Davis alleges that the "District Government violated the False Claims Act by knowingly

conspiring with the persons and entities described here, and with others, to defraud the Federal

Government by getting a false or fraudulent claim allowed or paid." (Complaint ¶ 62). The

"persons and entities" described in the complaint, however, are District of Columbia employees,

agents or officials. (*See, e.g.*, Complaint ¶ 33 and 38 persons identified as D.C. agents,

employees, and officials, along with relator and its staff).

As a matter of law, the District, a municipal corporation, cannot conspire with itself. *See*,

*Gladden v. Barry*, 558 F. Supp. 676, 680 (D.D.C. 1983) (The District of Columbia government is

a single entity acting and cannot be said to conspire with itself through its officials); *Michelin v.*

*Jenkins,* 704 F. Supp. 1, 4 (D.D.C 1989) (there can be no conspiracy between the District of

Columbia Board of Education and its officials to violate plaintiff's rights because the defendants

comprised a single entity that was incapable of entering into a conspiracy). *See also, Hilliard v.*

*Ferguson,* 30 F. 3d 649, 653 (5th Cir. 1994) (Public school board and its employees constitute

single legal entity and acts of the agents are acts of the corporation). Davis' complaint names

many individuals at several alleged clandestine meetings; however, the relator and his agents

were the only non-D.C. employees. (*See* Complaint ¶ 38 alleging attendance by relator, his

attorney and consultants). Unless the relator is alleging that it is a part of the "conspiracy" then

no claim is stated under count III, and it should be dismissed.

> **2.    *Failure to Allege Conspiratorial Concerted Action Bars Relief under Count III***

Nowhere in the complaint does Davis allege that an agreement was made by or between the persons named in the FCA complaint.   At most, Davis alleges that there were meetings at which discussions were held among District officials, agents and employees, as well as the relator, his employees and agents.  (*See* Complaint ¶¶ 33, 38).   As a matter of law, an agreement among two or more persons is an essential element of conspiracy.  *Blusal Meats,* 638 F. Supp.  at 828, *supra*.  Conspiracy under the FCA requires allegations of an agreement to get a false claim allowed or paid.  *Id.*  Davis' failure to allege the existence of any agreement between the individuals to get a false claim allowed or paid is anathema to liability for an alleged conspiracy to defraud the government claim under § 3729(3).

In summary, Count III should be dismissed since Davis' sole conspiracy averment is the legal conclusion that the conspiracy took place.  (Complaint ¶ 62).  Merely inserting the tag-line, ". . .and with others. . ," without more, should not garner Davis the fishing expedition that it seeks to tarnish the reputations of individual District of Columbia officials, employees and agents.

> ### E.   THIS COURT SHOULD DISMISS THIS COMPLAINT PURSUANT TO FED. R. CIV. PRO 12 (b)(6) SINCE "PRO SE" RELATOR IS BARRED FROM MAINTAINING A FALSE CLAIMS ACT "QUI TAM" ACTION

Davis, the relator, represents itself in this action *pro se*.  The FCA is silent as to whether a private individual can bring a qui tam suit *pro se*. *See* 31 U.S.C. §§ 3729-3733. The plain language of the FCA draws no distinction in an individual's ability to bring a *qui tam* suit based upon whether or not that individual is represented by counsel. *See* 31 U.S.C. § 3730(b) (1), (c) (3).  Nevertheless, *pro se* relators are barred from bringing FCA qui tam actions without

assistance of counsel. *U. S. ex rel. Fisher v. Network Software Associates,* 377 F. Supp. 2d 195, 197 (D.D.C. 2005). Absent adequate counsel, this complaint should be dismissed with prejudice.

As a general rule, the parties are free to conduct their own cases personally or by counsel. U.S. CONST. Art. vii.; *See,* 28 U.S.C.A. § 1654. ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). *Qui tam pro se* relator representation is an **exception** to this general rule since it is the government that is the real party in interest. *U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.,* 274 F. Supp. 2d 10, 16 (D.D.C. 2003) *aff'd,* 2004 WL 180264, *rehearing and rehearing en band denied, cert. denied,* 543 U.S. 820 (2004). Trial and litigation mistakes made by the lay relator could result in *res judicata* or issue preclusion to the government's detriment since the *pro se* relator would, in fact, act as if he or she were the attorney for the government. *Id.*

The record reveals that the relator had adequate counsel, who moved to be relieved. To date, Davis has failed to engage adequate counsel notwithstanding it is engaged in defending this pending dispositive motion. Davis should not waste a tribunal's resources for a third time by prolonging an action that must be dismissed on procedural grounds. In this case the procedural ground would be the failure of adequate counsel.

## IV.    CONCLUSION

For all the reasons set forth above, *pro se* relator Davis' complaint should be dismissed with prejudice.

Respectfully submitted:

PETER NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE

Deputy Attorney General
Civil Litigation Division

ELLEN EFROS [250746]
Chief, Equity Section I

/s/ Denise J. Baker
Denise J. Baker
D.C. Bar No. 493414
Assistant Attorney General
441 4th Street, Northwest, 6th Floor South
Washington, D.C. 20001
202-442-9887 (Telephone)
202-727-0431 (Facsimile)
Denise.baker@dc.gov